It's 1-1 at 6-1-4-1 Russell Maze v. Jerry Lester We are 1-15 minutes per side This is the last of the appellants Good morning. May it please the Court We need the light please I don't see a green light Now we do. Thank you Good morning. May it please the Court. Brian Walsh for Appellant Russell Maze I've mentioned to the Deputy Clerk I'd like to reserve 3 minutes for rebuttal You may Your Honors, the fundamental problem in Mr. Maze's trial was that the jury heard from the State's witnesses a scientifically complex explanation that the only way that Alex Maze could have suffered the damage to his brain that he suffered was from being shaken The medical evidence presented on this issue was so one-sided that the State in its closing was able to argue to the jury that every doctor who talked about this in this case agreed and that there's only one way it could have happened the point was uncontradicted Both points in this appeal address the issue of how we got to this point how did this evidence come to be effectively uncontradicted and I would suggest that Judge Sutton's language from the couch case is applicable here He said what seemed to be a simple explanation for the State's theory of causation was not so simple and if the jury had believed the new evidence it was not even true Ground 4 in the habeas petition the one that is indisputably exhausted relates to counsel's failure to consult with a radiologist about the MRIs and the CT scans and the importance here is that Dr. Mark Jennings, the treating neurologist in this case his testimony stands out for this reason He used multiple slides from an MRI taken 9 days after Alex Maze was admitted to the hospital He walked the jury through what these MRIs showed indicating on his own head what he was demonstrating on the screen He explained the significance of blood here or there in the brain or of swelling here or there His discussion is a narrative discussion with virtually no interruption It goes on for 8 pages of transcript After that he goes on to explain his conclusions He says first there's an injury to the left front part of the brain near the forehead Then because of an acceleration and deceleration there's an injury to the right rear portion of the brain He said there's no other non-accidental explanation besides shaking or an impact that could cause this and he testified this occurred immediately before Mr. Maze called 911 Now when I read the testimony I thought can you really tell all of that from an MRI? But I couldn't answer the question I thought that unlike Dr. Barnes they were not just limited to the MRI I mean they also took into account the contusion on his right temporal lobe I mean he had a bruise There is some evidence of a bruise to the head There's some evidence of a bruise to the abdomen I tried to get the photograph that's referred to in Dr. Barnes the cross of Dr. Barnes It doesn't seem to be part of the district court record Maybe it just wasn't marked as an exhibit Yes, I don't think the exhibits came over to the federal court Oh yeah, that would have been in state court Yes, all of this was in state court originally Of course That's right But my point is that isn't it true that Dr. Jennings and Dr. Starling they don't rely just on the MRI they're looking at the totality of information that they're getting Isn't that fair? They are looking at other evidence as well but the critical evidence in this case we submit is the head injury because it's the injury to the head as the jury found the injury to the head that caused the death and this is a felony murder case There is some other evidence of some other injuries perhaps or perhaps they came from a bleeding disorder which was Dr. Barnes' testimony that bruising certainly could very well have come from a coagulopathy problem and Dr. Barnes explained that the bruising on the head did not correspond to the internal injuries to the brain I don't remember him saying anything about Well, he said that the internal, the scans the condition of the brain internally was not consistent with were not typical of bruising He said that it's not consistent with the bruising that you see on the outside But he didn't say that it was He just didn't say anything about the bruise on Brian's forehead or temple He did address it to the extent he said I see that bruise and it is not consistent with what I see inside the brain Dr. Barnes did say that Do you remember what page he said that on? Because I don't remember that Yes, I can find that Well, you know what, on rebuttal maybe I can do that on rebuttal or on a 28-J letter, Your Honor Rebuttal is better Thank you So the issue is, there's this compelling testimony from Dr. Jennings and there's a cross-examination by counsel and he doesn't go anywhere near the MRI He doesn't touch it, makes no attempt whatsoever to cross-examine Dr. Jennings about the MRI and the reason is he can't No lawyer without consultation with a radiologist could have any hope of asking intelligent questions that would get an effective, favorable answer about what this MRI shows And also, Dr. Jennings used only the MRI There are three CT scans here Two of them taken before the MRI and one taken about nine months later Dr. Jennings didn't use those He said, well, they're CTs, they're not as clear Dr. Barnes did Dr. Barnes said CAT scans aren't as useful either He said they're not as useful But he said, if you line them up temporarily if you look at the progression of the images that you see over time that's particularly important the development of the injury here is not consistent with shaken baby syndrome And of course, counsel couldn't get that testimony because he doesn't have the ammunition to cause Dr. Jennings to say anything of the sort because CT scans and MRIs are the analogy I've been thinking of is it's like cross-examining a professor of classics about a document that's written in Greek If you don't have a professor of classics sitting by your side or consulting with you before trial you will get nowhere Well, let's say that it was below the standard of performance not to consult not to show these I don't know why he didn't show them to the pediatric radiologist that he consulted with He had a radiologist I mean, what do you have a radiologist for? And I guess they can speak to that But let's say that it was ineffective to not give them to the experts Was it clear that the defense counsel did not give it to the experts? I thought he said he couldn't recall It's clear that he didn't give them to the radiologist He said he couldn't recall whether he gave them to the pathologist expert I see You don't think a pathologist can read an x-ray? I think a pathologist could perhaps read an x-ray I don't think a pathologist can read an MRI or a CT scan And the evidence of that is that the medical examiner who testified in this case, Dr. Levy for the prosecution when he was asked did you read the MRIs or the CT scans he said, no, I read the radiologist's reports of the MRIs and the CT scans Does that mean counsel didn't give it to him? No, that doesn't show that counsel didn't give them to the pathologist But it shows that giving them to the pathologist is not the solution here If you have a radiologist identified and you only send him the x-ray and you don't send him the brain images But he didn't even know if he gave them to the pathologist He didn't know if he gave them to the pathologist Not knowing, not remembering years down the road doesn't mean he didn't do it It doesn't mean he didn't do it but there's no finding that he did You have a really high standard here The state court applied the Strickland standard, correct? The state court correctly identified the governing law Okay, they applied the governing law And the governing law requires deficient performance plus prejudice That's correct Plus, under EPPA, you have to establish that after applying the correct standard and looking at the evidence that their rulings on deficient performance and prejudice were an unreasonable application of clearly established federal law as established by the holdings of the Supreme Court That is all correct You're really talking factual issues here, right? In some respects, that's correct, your honor The last part, clearly established federal law There's no question that Strickland is the clearly established federal law It's clear the state court knew it and applied it And the question is whether it was applied unreasonably I agree And both the Supreme Court and this court in a number of cases have found in these failure to investigate situations that that standard has been met There are alibi cases from this court There are mitigating evidence in capital cases from both the Supreme Court and this court There are scientific investigation cases from both the Supreme Court and this court And so that's where we think we find ourselves But aren't you talking about I mean, defense counsel investigated this But you're saying he should have investigated it better That he should have done this and that I mean, he looked into whether this would be shaken baby syndrome or not And he consulted experts And you're just saying, well, he was negligent He should have done a better job at it Not that he didn't do any investigation at all And usually, as I read our investigation cases where we find that the state court finding was unreasonable There was no investigation Not that the investigation was inadequate or negligent or could have been done better Well, the standard is whether the investigation is reasonable So if counsel is going to terminate an inquiry Well, it's whether the state determination is unreasonable Well, but also under Strickland So before you get to AEDPA Under Strickland itself Counsel's decision as to how to approach the case needs to be based on a reasonable investigation So, for example, in the Couch case which is in many respects similar to this case Counsel had an expert And there was evidence available There was a fire department report available Counsel didn't get that report even though his client told him to go get it He necessarily didn't give that report to his expert He got a report from his expert that was consistent with the state's view of the case And he accepted it uncritically And this court said That's not a reasonable investigation How can you know whether something is worth pursuing unless you pursue it reasonably and understand what it is You can't present a capable defense unless you know what it is that you might be able to present This doesn't mirror Couch in that it was accepted uncritically the medical testimony of the state I guess you would agree with that that the cross-examination, for example of the state's neurologist included getting him to admit that shaken baby syndrome teaching changed over time The cross-exam did make some headway The cross-exam made some headway And I should clarify The point I'm talking about is that Couch's counsel accepted his own expert's report uncritically But there's some cross-examination here But there's no cross-examination at all about the MRIs and the CT scans And that's the real problem here To follow that then I just wonder if you could say that even in the efforts made on behalf of your client in habeas there's no definitive As among those experts I would say there's no certainty that any expert would have been able to say with conviction this could not have been shaken baby The brain couldn't have been shaken I don't know that any expert could say that it's absolutely impossible But that's far more than they would need to say to introduce reasonable doubt Well, I guess you're right, yeah If I may Certainly I want to ask the question I was asking five minutes ago Which is, let's just say we stipulate that there was an effective performance and that Dr. Jennings' presentation regarding the scans was very effective You still have to show that Dr. Barnes would have put a substantial dent in that Such that the Tennessee Court of Appeals was just way out of bounds in saying otherwise And how can you demonstrate that when Dr. Barnes, number one by his own characterization kind of puts his head in the sand with respect to the evidence of bruising and the bony fragments that are in the child's skull, number one And number two he also seems to have blinders on focusing only on whether it's shaken baby rather than battered baby On one point, Judge Kethledge I think ultimately everyone agreed there were no bony fragments There was an early suggestion that might have been the case But all parties concerned agree there were no bony fragments But on the point about putting his head in the sand what Dr. Barnes said is I'm a radiologist and I need to look at this uncritically without being prejudiced by other things First, that's the first thing I need to do I need to look at the images and I need to see what it is that I understand from the images And then I develop a differential and anyone should develop a differential diagnosis Here are the things we need to be thinking about Could it be an infection? Could it be this? Could it be that? And then there's some testing that needs to be done to rule it out So I don't think Dr. Barnes put his head in the sand about those issues ultimately I understand your explanation But isn't a jury going to be pretty influenced by Yeah, but how about the bruise? Is it just a coincidence he's got a bruise on his forehead the day he stops breathing and he's got these bleeding in his brain? Is that a coincidence? And ultimately if all of this evidence came in it may be that the jury would still find it sufficient to convict But the standard is only that there's a reasonable probability of a different outcome And when you have a prominent persuasive neuroradiologist like Dr. Barnes whose credibility is in fact enhanced by the fact that he used to testify for the prosecution and he's now saying I don't think we were doing it right then We think that enhances his credibility significantly When he testifies we think there's a reasonable probability that the jury says Wait a minute Now I'm not sure what happened Wasn't there a problem with Dr. Barnes that at the time of the trial he wouldn't have been quite as sure of his opinion as he was post-trial? Your Honor the state says that in their brief and it's simply not supported whatsoever by the record Dr. Barnes said very clearly even under pre-1998 triad analysis this would not qualify as a diagnosis for shaken baby syndrome He was very definitive on that point That is an important point in this case You've done a nice job Mr. Walsh but your time is up Thank you Your Honor We'll hear from Mr. Smith Thank you Good morning Good morning Good morning May it please the court My name is Andrew Smith on behalf of the respondent Jerry Lester The district court correctly denied the petitioner's challenge to his conviction for the first degree murder of his infant son I will focus on the exhausted claim to start with and get to the other if there's time at the end The Tennessee Court of Criminal Appeals did not unreasonably apply Strickland in denying this claim The petitioner argues that trial counsel should have consulted with the neurologist specifically Dr. Barnes But specifically should have shown the scans Right and specifically shown him that evidence In light of the actions trial counsel actually took the Court of Criminal Appeals was not unreasonable in finding there was no deficiency As Judge Griffin has referenced earlier the state findings get double deference here There's the Strickland deference on top of the second Under Harrington v. Richter if there's any reasonable argument that counsel was not deficient the Tennessee Court of Criminal Appeals finding must be affirmed The state Court of Appeals did not find that counsel actually showed the slides to even the pathologist correct? It was unclear whether the slides were shown My question is whether the state Court of Appeals made such a finding There was no finding So the state Court of Appeals made no finding It's undisputed that he didn't show it to the radiologist correct? Yes And his testimony was he sent a bunch of material to the pathologist but he didn't know whether the slides were included in that So don't we have to take it that on this record they were not sent? Your Honor under Tennessee state law it is the petitioner who has the burden of proving his factual allegations by clear and convincing evidence The fact that there is an uncertainty as to whether or not trial counsel did this it goes to the petitioner to show that and it's his burden to demonstrate that and as this court has pointed out that didn't occur in this case that burden is not overcome in this case Furthermore we know what counsel did do We know he consulted with two doctors that he actually presented to present medical expert testimony We know he consulted with two others who reviewed the material and decided that they believed abuse had occurred That's four doctors there He also consulted with a fifth who he attempted to have testify that the trial court would not allow So we know he consulted with five different medical experts in this case The failure to show slides to the sixth expert who might have testified on his behalf when he had shown five there's at least a reasonable argument that consulting with these five doctors who may or may not have gotten the one slide but certainly if they didn't didn't say He didn't say he may have sent it to five No He said he didn't know whether he sent it to one Would you I mean let's I know you disagree with the premise but just hypothetically if it were true that he did not show these slides to any expert wouldn't you agree that that's ineffective assistance failure to investigate? Your Honor I would I would contest that in one way only that you've got an attorney who gets material sends it off to an expert if there's something incomplete that should be included that isn't the expert is in a better position than the attorney I was going to say don't the files show that there is the CT scan and these films that counsel may or may not know whether he sent to the expert it's in the record that there are such things, right? Right, Your Honor You're exactly right you hire an expert to advise you now what what do I need to give you? What do I need to I mean, you don't the attorney is not the medical expert here the expert is Exactly, Your Honor that's exactly the argument the attorney relies on the expert to figure out what can I help you with if it's in the record and it's important you would assume the expert would request it that's exactly the statement also the Tennessee Court of Appeals found no prejudice, right? Yes so they not only found no deficient performance which has got to be an unreasonable application of clearly established law but they also found no prejudice and that conclusion that ruling also has to be an unreasonable application an application of clearly established federal law, right? So why do you think that Dr. Barnes why do you think there is no prejudice here? Why don't you think Dr. Barnes might have created some doubts with the jury? There are three reasons your honor the first is that the post-conviction court post-conviction judge was also the trial judge and specifically found that Dr. Barnes was not credible part of that was because as Judge Griffin mentioned earlier there was a recent contradiction or change in position as to whether or not the combination of the three symptoms Dr. Barnes had recently written in published articles that these symptoms equal abuse 1998 he did right so this was but this was what this trial 2004 2004 right the second trial we're talking about that was 04 so there was a contradiction or a change in position as the court has noted there were these unexplained additional bodily injuries there was also a broken clavicle that was not explained Dr. Barnes didn't claim not to see it but he was unique in that position which kind of detracts from his credibility when you've got every other expert sees this broken clavicle that he's going to testify that didn't occur was there bruising I mean there's reference to abdominal bruising was there bruising around the clavicle did any of the doctors note that I don't recall any testimony about externally visible bruising only that I believe trial counsel even testified that even to a non-medical expert I looked at it and saw what appeared to be a break from even a lay person's perspective that seemed obvious that's something that Dr. Barnes's testimony did not combat the Tennessee Court of Criminal Appeals also noted that there was no prejudice because Dr. Barnes's testimony was speculative as Judge Cook pointed out earlier there was no testimony to a reasonable degree of medical certainty that these injuries were caused by something other than shaken baby or battered baby syndrome it was just his testimony was oh there's a possibility something else occurred and that was to be put up against I believe it was four medical experts who testified to a reasonable degree of medical certainty that this is an abuse case therefore in light of those three factors there is no prejudice in this case and briefly let me just get to the other point the state argued and the district court found that the petitioner's other claim regarding the failure to submit an amicus brief by counsel was defaulted and we carry forward that analysis however to the extent the court finds that the claim is generally exhausted by the prior argument that counsel failed to retain a qualified medical expert I would just point out that there's no merit to the claim regardless you almost get to the same point regardless because even if the legal theory was exalted was exhausted the factual premise behind it was not these eleven affidavits the eleven opinions in the amicus brief were not presented in state court and Cullen v. Penholster would then prevent the district court from looking at it regardless and as to the eleven experts seven of them were not heard from at all in the state court proceedings and thus Cullen would clearly prevent or preclude their opinions from being heard two of the eleven were actually presented at trial Dr. Washington and Dr. Willey so the failure to present their opinions through exhibits when they actually appeared at trial is not a meritorious claim the other two were the two doctors who testified at the post-conviction proceedings and were found not to be credible by the post-conviction court thus if there are no other questions the respondent requests that the district court judgment be affirmed thank you counsel you two did a fine job Mr. Walsh you have reserved time very briefly your honor Judge Kethledge the site I think we were looking for before is pages 1969 and 70 that's the issue of the bruising on the head being inconsistent with the images within the brain a couple of brief points there's a mention of the credibility of Dr. Barnes I addressed that a little bit earlier in fact we believe he is more credible because he can explain to a jury the way it used to be the way it is now but perhaps the more fundamental point did he explain the way it was at the time of trial he explained that at the time of trial and at all prior times this would not meet the standard when did his theory change I mean he wrote about this in 1998 the trial was 2004 and now he's testifying post-trial    it's a process there's no one particular date your honor but the change in his opinion is a process there's no one particular date your honor but the change is important at a high level the change is not important on the facts of this case because Dr. Barnes said even under the old standards this is not shaken baby syndrome he said the findings I see here are not consistent are not typical of shaken baby syndrome and he explained directly to the court on a question from the post-conviction court the judge said what do you think happened here and he said I believe it is you're seeing hemorrhagic strokes most likely caused by a coagulopathy that existed for some time did he say I would have testified to that effect in 2004 he said he said under the he said under the standards that were in place even before 1998 this is not shaken baby syndrome no that opinion you just quoted did he say I would have given that opinion at trial in 2004 your honor I don't remember if he said well it's important it is but he said whether he used those words or not I don't know if he said it quite like that your honor I don't think he said I would have had that opinion in 2004 he said it wouldn't even meet the 1998 standards it's different than saying this is my opinion what was the cause as opposed to shaken baby syndrome wasn't the cause we're talking different things he said both of those things your honor I may be I may have given that opinion in 2004 however he would have said it wasn't shaken baby syndrome I think the clear implication at least of what he said was that if he had been called to testify under old standards new standards whatever he would have said this is not shaken baby syndrome I know but he wouldn't have given that opinion that you just quoted I believe he would have your honor did he say that did he testify to that he did not say if I had been called in 2004 you've answered my question as I understood his testimony he said he would have given the same opinions anytime I think that's right pre-98 it doesn't matter the change in his views from 98 to the later articles is not germane to his testimony here I agree it's a broader issue it's not specific to this case let me just ask you a quick question I know you're red lights on is there evidence in the record which would show that trial counsel before trial had reason to believe that the state was going to focus on these slides as it did I believe there is counsel testified this is the second trial there was a first trial in other words did counsel himself had reason to know that the slides were going to be featured as they were 10 pages of uninterrupted testimony so that counsel probably should have said I better get someone to look at these slides I believe that's clear from the appellate opinion in the first trial that Dr. Jennings testified at the first trial he's mentioned by name in the appellate opinion and counsel said he had the transcript and in the first trial they focused on the slides is that what you're saying that is not in the record the transcript of the first trial is not in the record and I believe that counsel will receive opinion in due course thank you